UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| VENATIUS EZIKE, et al., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) Civil Action No.: 16-cv-11832 |
| BRENDA ANNE BLISS, | ) ) ) |
| Defendant. | ) ) ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                        May 5, 2017

## I.   Introduction

Plaintiffs Venatius Ezike ("Ezike"), Joy Ehirim ("Ehirim"), minor child V.E. and minor child C.E. (collectively, "Plaintiffs") have filed this lawsuit against Brenda Anne Bliss ("Bliss"), alleging three counts of negligence and three counts of loss of consortium. D. 1 ¶¶ 43-76. Bliss has moved for abstention and dismissal pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). D. 16. For the reasons stated below, the Court DENIES the motion.

## II.  Standard of Review

Generally, "federal courts must abide by their 'virtually unflagging obligation' to exercise their lawful jurisdiction and resolve the matters properly before them." Nazario-Lugo v. Caribevisión Holdings, Inc., 670 F.3d 109, 114 (1st Cir. 2012) (quoting Colo. River, 424 U.S. at 817). "This duty, however, is not absolute" and certain exceptional circumstances warrant

1

departure from the general rule.  Id. at 114-15 (citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)).  "Over time, categories of cases have emerged illustrating when abstention may be appropriate" including categories of abstention like Pullman, Burford and Younger.  Id. at 115 (citations omitted).  Colorado River abstention "allows federal courts in limited instances to stay or dismiss proceedings that overlap with concurrent litigation in state court."  Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 21 (1st Cir. 2010).  The Court must only depart from its obligation to exercise jurisdiction after carefully considering both its obligation to do so and the combination of factors that would counsel against such exercise.  Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005) (citing Colo. River, 424 U.S. at 818).  "Only the clearest of justifications will warrant" abstention and "[t]he district court's discretion . . . should be heavily weighted against dismissal."  Id. at 71(quoting Colo. River, 424 U.S. at 81; citing KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 10 (1st Cir. 2003)); see Nazario-Lugo, 670 F.3d at 115.

### III. Factual Background

Unless otherwise noted, the following facts are taken from the Plaintiffs' complaint, D. 1, and are presumed to be true for the purpose of considering the motion to dismiss.

On September 9, 2013, Brigham and Women's Hospital ("BWH") admitted Ehirim at almost forty weeks pregnant due to complaints of spontaneous rupture of membranes with moderate vaginal bleeding and contractions.  Id. ¶ 9.  Later that day, Ehirim gave birth to V.E. via C-section delivery.  Id. ¶ 10.  From September 10, 2013 through September 12, 2013, Ehirim informed the medical providers that V.E. was sleepy and having difficulty breastfeeding.  Id. ¶ 11.  Despite Ehirim's reports, nurses observed that V.E. was breastfeeding well.  Id. ¶¶ 12-13.  Prior to 4:00 p.m. on September 10, 2013, V.E.'s chart noted that she had five good breastfeedings.  Id. ¶

18. Thereafter, on the evening of September 10th, Nurse Sullivan noted several observations in V.E.'s chart including that V.E.'s breastfeeding was "poor." Id. ¶¶ 20-21.

On September 11, 2013, Bliss, a registered nurse who was licensed to practice in the Commonwealth of Massachusetts, id. ¶ 8, treated Ehirim and V.E., id. ¶ 22. That same day, V.E.'s body weight dropped below her birth weight. Id. ¶ 23. Despite several poor feedings, no one checked V.E.'s blue glucose levels. Id. ¶ 24. At around 12:00 a.m. on September 11th, a medical provider—possibly Bliss—recorded that V.E. had not nursed in eight hours and that Ehirim was reporting V.E. was having trouble latching. Id. ¶ 25. Despite this, no one checked V.E.'s blood glucose level and a physician was not notified of this long period of time between feedings. Id.

On both September 11 and September 12, 2013, V.E. had signs and symptoms of hypoglycemia, including difficulty latching, poor feeding, weight loss and long periods of time between feedings. Id. ¶ 26. In the afternoon on September 12, 2013, Nurse Kent recorded that V.E.'s breastfeeding was poor. Id. ¶ 27. Between noon and 12:30 p.m. that day, V.E. changed color. Id. ¶ 28. At that time, Nurse Vixama noted in V.E.'s chart that "[m]other stated '[b]aby is changing color,'" that the V.E. was mucousy, noted jaundice and that a "Dr. Johnson" had been notified. Id. ¶ 29. At 4:00 p.m. on that same day, Ehirim and Ezike paged the BWH nurses after noticing that V.E. was twitching and turning blue. Id. ¶¶ 30-31. This occurred five more times, at which point Ehirim paged the nurses each time for assistance. Id. ¶¶ 31-32. After the fifth time, Nurse Gibbons examined V.E., recorded twitching in V.E.'s left eye and arm in V.E.'s medical chart and called the NICU for an evaluation. Id. ¶ 33.

At this point, V.E. was transferred from the nursery to NICU triage. Id. ¶ 34. While in the NICU triage, V.E. had two generalized seizures and was given phenobarbital. Id. ¶ 35. By 10:15 p.m. on September 12, 2013, V.E.'s blood glucose levels were less than twenty. Id. ¶ 37. After

3

being given fluids, V.E.'s blood glucose level rose to thirty-two. Id. After being given a second round of fluids, V.E.'s blood glucose level rose to seventy-six. Id.

On September 15, 2013, an MRI of V.E. revealed white brain matter injury and evidence of stroke. Id. ¶ 39. Medical providers diagnosed V.E. with hypoglycemia which had led to seizure, stroke and white matter injury. Id. ¶ 40. As a result, V.E. continues to suffer from white matter brain injury which has manifested into several permanent physical and medical problems including speech and other cognitive delays. Id. ¶ 41.

Plaintiffs assert that had Bliss recognized the symptoms and risk of hypoglycemia—including that V.E. was feeding poorly, going for periods lasting over four hours before feedings, losing weight and twitching—and had taken certain medical interventions, V.E.'s hypoglycemia would have been diagnosed and treated before it caused V.E. to have seizures and a stroke. Id. ¶ 43.

In addition to bringing this action against Bliss in this Court, Plaintiffs have filed another lawsuit for negligence and loss of consortium against other medical providers. D. 16-3. Specifically, on the same day that Plaintiffs filed this lawsuit in this Court, they also brought negligence and loss of consortium claims in Suffolk Superior Court against other nurses and doctors at BWH. Id.; see 16-1 at 2.

**IV.    Procedural History**

Plaintiffs instituted this action on September 8, 2016. D. 1. Bliss has now filed a motion for abstention and dismissal. D. 16. The Court heard the parties on the pending motion and took the matter under advisement. D. 20.

## V.     Bliss's Motion to Abstain and Dismiss

Bliss moves for abstention and dismissal of this case based upon Colorado River abstention. D. 16-1 at 3-4. Colorado River abstention is a narrow doctrine. Jiménez, 597 F.3d at 27. When considering the application of this doctrine, the Court must address whether exceptional circumstances warrant "the abdication of jurisdiction in favor of parallel state court litigation." KPS & Assocs., 318 F.3d at 10. The First Circuit has explained that a court may consider the following factors to determine exceptional circumstances that warrant Colorado River abstention:

> (1) whether either court has assumed jurisdiction over a *res;* (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Id. (citations omitted). "No one factor is meant to be determinative, but rather courts must make a 'carefully considered judgment'" taking into account each factor and the overall presumption in favor of exercising jurisdiction. Rio Grande, 397 F.3d at 72 (quoting Colo. River, 424 U.S. at 818). As explained, "the cases that satisfy this test are few and far between," Jiménez, 597 F.3d at 28, and the mere existence of pending, parallel state litigation does not necessitate abstention absent exceptional circumstances, Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 10 (1st Cir. 2002). If the balance of factors mandates abstention, the Court must then decide whether the more appropriate disposition of the case is dismissal or a stay of the proceedings. Jiménez, 597 F.3d at 31.

### A.     *Colorado River* Does Not Warrant Abstention in This Case

As Bliss concedes, certain Colorado River factors have no bearing in this case. That is, Bliss admits that there is no property at issue in this case, there is no additional inconvenience to pursuing the claim in this federal forum as both the state and federal forums are located in Boston

and the order in which each forum obtained jurisdiction is immaterial here where both cases were filed on the same day. D. 16-1 at 4 n.5. Thus, three of the eight factors enumerated by the First Circuit—factors one, two and four—do not favor abstention. See Rojas-Hernandez v. P. R. Elec. Power Auth., 925 F.2d 492, 496 (1st Cir. 1991).

The remaining factors for consideration are either neutral or weigh in favor of exercising jurisdiction over this case. On its face, the third factor—desirability to avoid piecemeal litigation—may appear to weigh in favor of abstention. The First Circuit, however, has explained that "[t]he 'piecemeal litigation' to be avoided is something more than just the repetitive adjudication that takes place in all cases implicating Colorado River doctrine." Jiménez, 597 F.3d at 29. That is, "[c]oncurrent federal-state jurisdiction over the same action will necessarily involve some degree of 'routine inefficiency that is the inevitable result of parallel proceedings.'" Id. (quoting Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 16 (1st Cir. 1990)). Instead, "[w]eight may be afforded to the piecemeal litigation factor only where the implications and practical effects of litigating the parallel actions provide an exceptional basis for surrendering federal jurisdiction." Nazario-Lugo, 670 F.3d at 116 (citing Jiménez, 597 F.3d at 29) (emphasis in original). Such exceptional circumstances include but not are not limited to (1) a federal statute at issue in the case that mandates unified proceedings, Colo. River, 424 U.S. at 819-20; (2) an attempt to avoid unwieldy piecemeal litigation when there were many unresolved state law issues, Rivera-Feliciano v. Acevedo-Vilá, 438 F.3d 50, 61 (1st Cir. 2006); (3) a risk that the federal litigation could be moot or deemed advisory due to the pendency of the state court appellate proceeding, Currie, 290 F.3d at 10; and (4) where different interpretations of an insurance policy could leave the insured without appropriate coverage after years of payment, Liberty Mut. Ins. Co.

v. Foremost-McKesson, Inc., 751 F.2d 475, 477 (1st Cir. 1985); see Jiménez, 597 F.3d at 29 (examining each of the preceding four cases).

The risk of piecemeal litigation in this case is not so exceptional to weigh in favor of abstention. This case does not involve any of the circumstances that the First Circuit has previously deemed to be exceptional: there is no federal policy of unified proceedings implicated here, no basis to believe there is a series of unresolved state law questions and no risk of federal litigation becoming moot as a result of the state court proceedings. Bliss contends that this case is similar to Jiménez in that there is an overwhelming concern for "fragmented adjudication" that militates against federal jurisdiction. D. 16-1 at 4-5. Jiménez, however, stands on different ground. There, the First Circuit determined that an extraordinary situation existed because the absence of certain parties in the federal action meant that "in all likelihood the district court would be unable to resolve the defendants' contractual liability." Jiménez, 597 F.3d at 29. Moreover, the First Circuit explained that the district court could only determine the defendants' possible obligations to certain parties, but would have to direct the defendants to look to the local court to determine their obligations under the same contract to the non-diverse parties who were not in federal court. Id. at 30. The First Circuit further elaborated that the local court could proceed with all of the parties in the same court and "comprehensively adjudicate the defendants' liability." Id.

The same is not true here. There is no concern for incomplete or insufficient adjudication of the claims on the merits if the case against Bliss remained in federal court. Unlike Jiménez, the Court here could conclusively resolve the case against Bliss without reference to the state court proceeding. Moreover, as Bliss notes, "[t]he claims against the [s]tate [c]ourt [d]efendants are not dependent upon the claims against Bliss," D. 16-1 at 5, and vice versa, even if the medical care that each provided overlapped that provided by the others. Thus, there is no exceptional concern

7

here, and the routine inefficiencies resulting from parallel litigation are not enough to weigh in favor of abstention. See Nazario-Lugo, 670 F.3d at 116-17.

Next, the Court must consider whether state or federal law controls. Jiménez, 597 F.3d at 30. Bliss asserts that this factor weighs in favor of abstention because Massachusetts law governs this case. D. 16-1 at 7. Although state law governs the negligence and loss of consortium claims in this diversity action, this alone does not tip the scales toward abstention. "It is only in 'rare instances' that the presence of state-law issues creates any momentum towards deferring to pending local litigation." Nazario-Lugo, 670 F.3d at 118. That is, it is only where state law issues "present particularly novel, unusual or difficult questions of legal interpretation" that it is appropriate to defer to state court resolution. Id. (quoting Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc., 48 F.3d 46, 50 (1st Cir. 1995)). Bliss makes no claim that any such novel question of state law exists here, D. 16-1 at 7, and the Court does not glean one from the record. Instead, this case appears to be "a garden variety federal diversity case requiring only the application of settled principles of state law" that does not tilt the balance in favor of abstention. Nazario-Lugo, 670 F.3d at 119; see Spark Energy Gas, LP v. Toxikon Corp., 864 F. Supp. 2d 210, 220-21 (D. Mass. 2012) (declining to defer jurisdiction because no novel or difficult questions of law existed). Indeed, this case is unlike those in which the First Circuit affirmed a stay or dismissal based upon Colorado River. In those cases, state law governed and an unresolved question of law was central to the disposition of the case. See, e.g., Jiménez, 597 F.3d at 30 (explaining that the question of whether the parties could maintain complete diversity hinged on an unresolved question of Puerto Rican law); Currie, 290 F.3d at 11 (affirming abstention in part because "[t]he state law question is not clear, nor is it clear how the state ultimately would balance the important policy interests"

8

at play).  For these reasons, the fifth factor—whether state or federal law controls—does not weigh in favor of abstention.

The sixth factor—the adequacy of the state forum to protect each of the parties' interests—is, at best, neutral in this case.  Simply because a state court is an adequate forum to hear the case does not weigh in favor of abstention.  United States v. Fairway Capital Corp., 483 F.3d 34, 43-44 (1st Cir. 2007) (citing Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986)).  Instead, the First Circuit only considers this factor "when it disfavors abstention" because the state forum is not adequate for the case at hand.  Id. (citing Bethlehem Contracting, 800 F.2d at 328).  Thus, "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action." Id. (quoting Bethlehem Contracting, 800 F.2d at 328).  Accordingly, the sixth factor does not support abstention.

With respect to the seventh factor, the Court must assess the nature of the claims because "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation."  Villa Marina, 915 F.2d at 15 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 17 n.20 (1983)).  Reactiveness is "where one party files a federal action in reaction to an adverse ruling in state court" and vexatiousness "ordinarily refers to a situation where one party files a federal action merely to cause a delay or to force the other side to incur the additional costs associated with litigating the same issue in two separate courts."  Paul Revere Variable Annuity Ins. Co. v. Thomas, 66 F. Supp. 2d 217, 222 (D. Mass. 1999) (citing Villa Marina, 915 F.2d at 15), aff'd sub nom. Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15 (1st Cir. 2000).  Neither circumstance is present here.  As to reactiveness, Gonzalez v. Cruz, 926 F.2d 1 (1st Cir. 1991), is instructive.

There, the First Circuit held that the federal lawsuit in question was not reactive because the plaintiff "sued in federal court first—thus obviously not in response to an unfavorable ruling in the commonwealth court." Id. at 4; see Villa Marina, 915 F.2d at 15 (explaining that if the plaintiff "went to federal court solely in reaction to its failure in the Commonwealth court, that fact should be held against it in the Colorado River balance"). Like Gonzalez, Plaintiffs cannot have acted reactively: this lawsuit was filed on the same day as the state case against the other, non-diverse medical providers and neither lawsuit has progressed far into the discovery stage.[1] See D. 16-1 at 4 n.5. That is, it cannot be said, on the present record, that this case was contrived to circumvent the state court procedures, schedule or rulings. Cf. Paul Revere, 66 F. Supp. 2d at 222 (explaining that the paradigmatic case of reactiveness is one in which a plaintiff filed a motion for a preliminary injunction in federal court after losing the identical motion in state court).

Similarly, there is no indication that Plaintiffs have acted vexatiously. Here, there are different defendants in each case. Accordingly, it is unlikely that Plaintiffs' choice of separate forums will cause delays or impose additional costs onto any one defendant as they do not overlap. Finally, this case differs significantly from those in which a court has determined that a plaintiff was proceeding improperly. See, e.g., Pasquantonio v. Poley, 834 F. Supp. 2d 33, 37 (D. Mass. 2011) (explaining that the gamesmanship of filing a subsequent federal case eight months later for faster resolution bordered on vexatious conduct and that abstention was necessary). For these reasons, the seventh factor also does not tip in favor of abstention.

---

[1] At the motion hearing, counsel on both sides indicated that Nurse Canea Carothers ("Carothers") no longer resides in Massachusetts and has moved to West Virginia. Hr'g Tr. at 33. That being so, Plaintiffs' counsel represented that counsel was not sure where Carothers was living at the time of filing both complaints because Carothers is a traveling nurse who moves from time to time. Id. For this reason, counsel decided to include Carothers in the state court action to preserve its cause of action as the statute of limitations was approaching and it was unclear whether Carothers was a diverse party. Id.

The last factor to consider also does not weigh in favor of abstention. The eighth factor requires courts to examine "the principles underlying removal jurisdiction to decide whether surrendering jurisdiction is appropriate in a given case." Pasquantonio, 834 F. Supp. 2d at 37 (citing Villa Marina, 915 F.2d at 14). "The First Circuit has explained that the removal statute, which authorizes defendants but not plaintiffs to remove a case from state to federal court, reflects Congress' intent to limit plaintiffs to their initial choice of forum." Spark Energy, 864 F. Supp. 2d at 221 (citing Villa Marina, 915 F.2d at 14). As a result, "this factor weighs in favor of abstention when the same plaintiff attempts to litigate the same issues in both forums." Id. (citing Villa Marina, 915 F.2d at 14). Yet this factor does not support abstention here. As explained in the second opinion in Villa Marina, the removal factor is not relevant where the two lawsuits are not identical and the defendants in each lawsuit are different. See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 536 (1st Cir. 1991). Indeed, this factor strongly favors abstention "where the plaintiffs have, in effect, removed the original suit to federal court by filing a later, duplicative federal suit against the same defendants." Pasquantonio, 834 F. Supp. 2d at 37 (citing Villa Marina, 915 F.2d at 14). In other words, the purpose of the eighth factor is to prevent a complaint from effectively being refiled in federal court after it has been filed in state court. That is not the case here.

Bliss relies upon Pasquantonio v. Poley for support. D. 16-2. Several distinctions separate Pasquantonio, where Colorado River abstention was warranted, from the instant litigation, where it is not. First, the Pasquantonio court explained that the fourth factor—the order in which the forums obtained jurisdiction—weighed "only mildly" in favor of abstention. Pasquantonio, 834 F. Supp. 2d at 37. Second, that court held that the eighth factor "strongly favor[ed] abstention" in that case. Id. There, after filing a state court action, the same plaintiffs "filed a substantially

11

identical complaint" in federal court "eight months later" which resulted in "the state and federal lawsuits involv[ing] identical parties and identical claims." Id. at 35-36. In so doing, the "plaintiffs [were] essentially seeking to exploit the federal system as a means of bypassing slower state proceedings and achieving a more expedient, final state court decision on issues of unresolved state law." Id. at 37. The Pasquantonio court thus abstained for purposes of "reject[ing] plaintiffs' attempt to elude prescribed state court procedure." Id. The same cannot be said here. Both cases were filed on the same day and neither case has proceeded far beyond the other. See D. 16-1 at 4 n.5. Moreover, there is no indication from the posture of the case or the motion papers that Plaintiffs are attempting to circumvent state court proceedings by bringing the same defendants in federal court pursuant to an identical set of claims. Instead, Plaintiffs are pursuing tort claims against all non-diverse parties in state court while concomitantly lodging allegations against Bliss in federal court. Unlike Pasquantonio, there is no conduct that "border[s] on vexatious and contrived" behavior. See Pasquantonio, 834 F. Supp. 2d at 37.

Third, the Pasquantonio court determined that abstention was appropriate for the additional reason that there were unresolved and complicated state questions that remained unanswered and which were currently pending before the state court. Id. at 38. As explained, that is not the case here. For these reasons, Pasquantonio does not compel abstention.

As a result, the Court concludes Colorado River does not mandate abstention and that neither a stay nor dismissal is appropriate.

### B. Even If Abstention Were Warranted, the Court Would Not Dismiss This Case

If the Court were to conclude that abstention were appropriate—which it does not—the Court must then determine "whether the appropriate disposition is a dismissal or a stay of the proceedings." Jiménez, 597 F.3d at 31. "In this Circuit, Colorado River abstention has historically resulted in a stay" instead of outright dismissal because the First Circuit "see[s] no harm to judicial economy in going [this] more cautious route." Id. (citations omitted); see Rivera-Feliciano, 438 F.3d at 64; Currie, 290 F.3d at 13; Liberty Mut., 751 F.2d at 477. Here, the Court concludes that Bliss has presented no exceptional circumstance that would warrant dismissal in lieu of a stay. For this additional reason, Bliss's motion for dismissal based upon Colorado River is denied.

### VI. Conclusion

For the aforementioned reasons, the Court DENIES Bliss's motion for abstention and dismissal, D. 16.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge